*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0418P (6th Cir.)
File Name: 03a0418p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

HOANG MINH LY,
    *Petitioner-Appellee,*

    *v.*

MARK B. HANSEN, JAMES
ZIGLAR, and JOHN ASHCROFT,
    *Respondents-Appellants.*

No. 01-3016

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-01871—Solomon Oliver, Jr., District Judge.

Argued: July 31, 2002

Decided and Filed: November 26, 2003

Before: BOGGS, Chief Judge; RYAN, Circuit Judge; and
HAYNES, District Judge.[*]

─────────────────

[*] The Honorable William J. Haynes, United States District Judge for the Middle District of Tennessee, sitting by designation.

─────────────────

## COUNSEL

**ARGUED:** Michelle E. Gorden, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Appellants. Judy Rabinovitz, ACLU IMMIGRATION RIGHTS PROJECT, New York, New York, for Appellee. **ON BRIEF:** Michelle E. Gorden, Emily A. Radford, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., Lisa H. Johnson, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellants. Richard T. Herman, RICHARD T. HERMAN & ASSOCIATES, Cleveland, Ohio, for Appellee.

BOGGS, C. J., delivered the opinion of the court, in which RYAN, J., joined. HAYNES, D. J. (pp. 18-26), delivered a separate opinion concurring in part and dissenting in part.

─────────────────

## OPINION

─────────────────

BOGGS, Chief Judge. Mark Hansen, district director of the Immigration and Naturalization Service (INS), appeals the grant of habeas corpus to Hoang Minh Ly, a deportable criminal alien. Ly, a citizen of Vietnam, challenged the constitutionality of § 236(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which requires the Attorney General to detain immigrants who have committed certain crimes, pending removal proceedings. 8 U.S.C. § 1226(c) (West 1999). Ly alleges that the section violates substantive and procedural due process under the Fifth Amendment because it does not allow criminal aliens individual bond hearings to determine their suitability for release pending removal proceedings. Because the Supreme Court, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), determined that IIRIRA should be interpreted to avoid

the constitutional questions raised by indefinite detention of aliens awaiting removal from the United States, we affirm the result below for reasons different than those relied on by the district court. *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999).

**I**

Hoang Minh Ly entered the United States as a refugee in 1986. In 1993, Ly was convicted of credit card fraud, and sentenced to four months in prison, with two years of supervised release. In 1998, Ly was involved in a check-kiting scheme, wherein he deposited counterfeit cashier's checks into a bank account, knowing that someone else would withdraw the money and split the proceeds. He was convicted of bank fraud. Ly has fully served his criminal sentences on both convictions.

The INS issued Ly a Notice to Appear on May 10, 1999. The INS took Ly into custody, under the mandatory detention provisions of IIRIRA § 236(c), on May 11, 1999. Overall, Ly was kept in detention for 500 days, before his release at the order of the district court. The INS asserted that Ly was subject to removal[1] from the United States because he was an alien convicted of two crimes involving moral turpitude, and he was an alien convicted of an aggravated felony. On August 5, 1999, Ly filed a habeas corpus petition in federal district court, challenging his detention. The INS supplemented the charges against Ly on August 13, 1999, with another charge that Ly was an alien convicted of an aggravated felony. At an August 19, 1999 hearing, Ly requested a continuance to permit his counsel additional time to review the supplemental charges. The hearing was rescheduled for September 21, 1999. At the September 21,

---

[1]Actual removal of Ly from the United States was never a possibility during this process. Vietnam has not and does not accept deportees because there is no repatriation agreement between the United States and Vietnam.

1999 hearing, the immigration judge found that Ly was removable. Ly then filed applications for relief from deportation on various grounds, including asylum, admission, withholding of removal, deferral of removal, and permanent resident status. On January 27, 2000, the INS issued a Notice of Decision denying Ly's application for permanent resident status. The immigration judge set a merits hearing for Ly's other applications for relief for March 16, 2000, but the hearing was continued to April 28, 2000. In September 2000, the magistrate judge recommended that habeas relief be granted. The district court adopted this recommendation, granting habeas relief unless a bond hearing was held. The INS timely appealed the district court's decision. One month later, on October 19, 2000, the immigration judge entered a written decision, ordering Ly's removal to Vietnam and denying his remaining applications for relief. On April 30, 2001, the Board of Immigration Appeals issued a final decision, and affirmed the immigration judge's order. Based on the final administrative removal order, the Government filed a motion with us to remand the case to district court.

The INS, in accordance with the district court's order, conducted a bond hearing. At that hearing, on November 21, 2000, the immigration judge determined that he did not have the statutory authority to release Ly from detention. Nevertheless, on November 24, 2000, the INS released Ly on his own recognizance and subject to specified conditions.

**II**

**A. Substantive Due Process and *Zadvydas***

**1. Standard of Review and Jurisdiction**

We review the grant of habeas corpus, and the constitutional questions inherent in such a grant, *de novo*. *Staley v. Jones*, 239 F.3d 769, 775 (6th Cir. 2001). We have jurisdiction to consider both substantive and procedural due process challenges to § 236(c), despite the jurisdictional

limitations set out in IIRIRA. IIRIRA states: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ." 8 U.S.C. § 1252(g) (West 1999). In *Pak v. Reno*, 196 F.3d 666, 671-72 (6th Cir. 1999), we held that this jurisdictional limitation did not extend to the habeas power of federal courts, in order to avoid the constitutional issue of whether or not such a limitation would violate the Suspension Clause of the Constitution, which states that the "privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." U.S. Const. Art. I § 9 cl. 2. The Supreme Court has also upheld the jurisdiction of courts to consider habeas claims arising out of immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (courts have jurisdiction to hear habeas claims arising out of IIRIRA's post-removal detention provisions).

## 2.   *Zadvydas*

The parties here ask whether Ly may be indefinitely incarcerated, under IIRIRA's mandatory pre-removal detention statute, § 236(c), pending his removal to Vietnam, given that such removal is not currently foreseeable due to the lack of a repatriation treaty between the United States and Vietnam. Section 236 of IIRIRA requires the attorney general to detain, among others, aliens convicted of either an aggravated felony or two crimes involving moral turpitude (such as fraud), pending removal proceedings. 8 U.S.C. § 1226(c). The INS asserts that because aliens detained under § 236 are *prima facie* deportable, they have no liberty interest and may be detained indefinitely, without a bond hearing, until an order of removal is entered. Ly contends that the constitution requires an immediate bond hearing for all criminal aliens awaiting removal.

While the appeal in the case was pending, the Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678 (2001), that indefinite detention of a removable criminal alien after a removal proceeding would violate a due process right to liberty under the Fifth Amendment. *Id.* at 682. *Zadvydas* therefore construed IIRIRA as not requiring indefinite incarceration, by imposing a reasonable time limit (six months), supervised by the federal courts in habeas proceedings, on the amount of time that a deportable criminal alien may be detained after a determination as to removability has been made, unless the government asserts a "strong special justification" for the detention. *Id.* at 690.

*Zadvydas* addressed the prospect of indefinite incarceration of deportable aliens created by the IIRIRA *post-removal* detention statute. The question remaining before us is whether the holding of *Zadvydas* extends to the mandatory *pre-removal* detention statute, § 236. Most aliens may be released on bond or paroled until their removal hearing. 8 U.S.C. § 1226(a) (West 1999). However, because certain types of criminal aliens pose extraordinarily high flight risks, Congress has ordered that aliens who have been convicted of an aggravated felony or two crimes involving moral turpitude (including fraud) *must* be detained pending removal proceedings, based on a *prima facie* determination of removability by the government. 8 U.S.C. § 1226(c). If an order of removal is not entered (or not entered promptly), the result is mandatory indefinite detention for criminal aliens, which is prohibited by *Zadvydas*.

## 3.   Circuit Decisions

The question of indefinite detention under § 236 is one of first impression in this circuit. Our sister circuits have split on the issue. The Ninth and Tenth Circuits have adopted a bright-line approach, holding that § 236 is unconstitutional as applied to lawful permanent residents, no matter the length of actual detention. *Hoang v. Comfort*, 282 F.3d 1247 (10th Cir. 2002), *rev'd*, 123 S. Ct. 1963 (2003); *Kim v. Ziglar*, 276 F.3d

523, *rev'd*, 123 S. Ct. 1708 (2003) (9th Cir. 2002). The Third Circuit has held that § 236 mandatory detention is unconstitutional if the detained alien seeks to avoid removal via administrative remedies. *Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001). The Fourth Circuit adopted a case-by-case approach, requiring an individualized determination of dangerousness, *Welch v. Ashcroft*, 293 F.3d 213 (4th Cir. 2002), and the Seventh Circuit has held that indefinite detention under § 236 is entirely constitutional. *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999).

We adopt none of these approaches. Our logic is simple. *Zadvydas* prohibits only one thing: permanent civil detention without a showing of a "strong special justification" that consists of more than the government's generalized interest in protecting the community from danger. *Zadvydas*, 533 U.S. at 690. *Zadvydas* establishes a specific rule: "[A] habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. Since permanent detention of Permanent Resident Aliens under § 236 would be unconstitutional, we construe the statute to avoid that result, as did the Court in *Zadvydas*. *Zadvydas* also made clear that *limited* civil detention, without bond, is constitutional as applied to deportable aliens. *Id.* at 701. Therefore, we hold that the INS may detain *prima facie* removable aliens for a time reasonably required to complete removal proceedings in a timely manner. If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings. With this standard in mind, we turn to the decisions of the magistrate judge and the district court.

## 4. Level of Scrutiny

The magistrate judge's opinion recommending the grant of habeas relief, as adopted by the district court, found that deportable aliens have a fundamental liberty interest under the Fifth Amendment, the protection of which requires an individualized bond hearing. Instead of characterizing the issue as one of reasonable limitation on the period of

incarceration, as did *Zadvydas*, the magistrate judge stated: "The issue thus presented is whether § 236 violates Petitioner's Fifth Amendment right to due process by removing discretion on the part of the Attorney General to provide individualized bond hearings for those aliens against whom deportation proceedings are ongoing."

The level of scrutiny to be applied in determining whether or not a restriction on a substantive due process right should be upheld varies with the nature of the right. The magistrate judge's opinion noted that courts are to apply strict scrutiny (the law must be narrowly tailored to a compelling state interest) to governmental conduct that interferes with rights "implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Palko v. Conn.*, 302 U.S. 319, 325-26 (1937)). The INS argued there, as here, that immigration decisions should be subject to the more deferential rational basis test, since deportable aliens have no liberty interest in being at large in the United States.

The magistrate judge applied neither the strict scrutiny or rational basis tests in pure form; rather, he likened the pre-removal detention of criminal aliens to the pre-trial detention of criminals, and adopted the "excessive to its purpose" test of *Salerno* for regulatory legislation not designed for punishment. In weighing the competing interests, courts consider "the length of detention to which the petitioner has already been subjected, the likelihood of deportation, the potential length of the detention into the future, the likelihood that release will frustrate the petitioner's actual deportation, and the danger to the community posed by the petitioner if released." *Hermanowski v. Farquharson*, 39 F. Supp. 2d 148, 159 (D.R.I. 1999). On balancing these factors, the magistrate judge determined that Ly's extended incarceration was not justified in light of the minimal danger he posed to the public.

*Zadvydas* used a different analytical approach. Although the opinion quoted *Salerno* with approval, *Zadvydas* noted that removal proceedings were civil, not criminal, and held

that *if* the government wished to *indefinitely* detain a removable alien, it must show a "strong special justification" for such detention. *Zadvydas*, 533 U.S. at 690. A general goal of preventing danger to the community is insufficient to support indefinite civil detention: "[W]e have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id*. at 690-91. "In cases in which preventive detention is of potentially *indefinite* duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger." *Id*. at 691, *citing Kansas v. Hendricks*, 521 U.S. 346, 368 (1997) (emphasis in original). Furthermore, *Zadvydas* noted that "where detention's goal is no longer practically attainable, detention no longer 'bear[s] [a] reasonable relation to the purpose for which the individual [was] committed.'" *Zadvydas*, 533 U.S. at 690, quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

The INS argues that because Ly is *prima facie* removable, he has no liberty interest at all, and cannot therefore complain that he is not at liberty within the United States. While it is true that a removable alien has no right to be in the country, it does not mean that he has no right to be at liberty. *Zadvydas* established that deportable aliens, even those who had already been ordered removed, possess a substantive Fifth Amendment liberty interest, and that the interest was violated by indefinite detention. The INS relies on the Seventh Circuit's decision in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). In that case, the Seventh Circuit found that § 236 violated neither procedural or substantive due process, on the logic the INS asserts here: "A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Parra*, 172 F.3d at 958. To the extent that *Parra* holds that a criminal alien does not possess a Fifth Amendment liberty interest impacted by

indefinite civil detention, it has been overruled by *Zadvydas*. 533 U.S. at 690.

The INS's final argument is that Congress exercises plenary control over immigration, and that we should therefore not question the judgment of Congress by ourselves placing limits on mandatory detention. One point of difference between this case and *Zadvydas* is that the post-removal statute is permissive, whereas the pre-removal statute, as applied to specified criminal aliens, is mandatory. *Compare* 8 U.S.C. §1226(c)(1) (The Attorney General *shall* take into custody . . . ) *with* 8 U.S.C. § 1231(a)(6) (An alien ordered removed . . . *may* be detained beyond the removal period) (emphasis added). The INS argues that the mandatory nature of pre-removal detention reveals a clear congressional intent to keep criminal aliens detained for as long as it takes to deport them, even if such detention is effectively perpetual.

There are two reasons to reject this argument. First, although criminal aliens may be incarcerated pending removal, the time of incarceration is limited by constitutional considerations, and must bear a reasonable relation to removal. As the *Zadvydas* court stated: "detention pending a determination of removability . . . has [an] obvious termination point." *Zadvydas*, 533 U.S. at 697. The mandatory nature of the detention does not alter the constitutional limitations to which it is subject. Congress's plenary control must still be exercised within the bounds of the Constitution. *INS v. Chadha*, 462 U.S. 919, 941 (1983). Second, while Congress did express a desire to have certain criminal aliens incarcerated during removal proceedings, it also made clear that such proceedings were to proceed quickly. 8 U.S.C. § 1229(d)(1) (West 1999) ("In the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction."). In short, imposing a reasonable time limitation on the pre-detention period both saves the statute from

constitutional challenge, and is consistent with Congress's directions as to how the statute should be applied.

We must also assess the constitutional impact of the presence or absence of hearings. In *Zadvydas*, the Court found it significant that the detainees were afforded administrative, rather than judicial, proceedings, at which the alien bore the burden of proof. *Zadvydas*, 533 U.S. at 692. Such process, the Court determined, would be insufficient to permit indefinite detention. Similarly, in this case, the magistrate judge noted: "[i]t is highly significant that the statutory scheme affords petitioner no opportunity to convince an Immigration Judge that he is not a danger to the community, but, rather, is irrebutably presumed to be so." In both cases, procedural protections (rights to a hearing at which the alien could argue that he did not pose a danger to the community) were too limited to justify an indefinite detention. However, *Zadvydas* did not mandate extra procedural protection in order to constitutionalize the imposition of indefinite civil detention; rather, it held that indefinite deprivation of liberty would require extensive procedural protection – and therefore construed the post-removal detention statute to avoid the specter of permanent detention. *Zadvydas*, 533 U.S. at 689.

We do the same: by construing the pre-removal detention statute to include an implicit requirement that removal proceedings be concluded within a reasonable time, we avoid the need to mandate the procedural protections that would be required to detain deportable aliens indefinitely. Although we affirm the grant of habeas corpus and the district court's finding that incarceration for 18 months pending removal proceedings is unreasonable, we do not require the United States to hold bond hearings for every criminal alien detained under § 236. Ly's case is not the norm, in that he is not actually removable. In the majority of cases, where an order of removal is promptly entered and removal is effected within the time allotted under *Zadvydas*, bond hearings are not required. As *Zadvydas* made clear, the liberty interest of deportable criminal aliens is adequately served by the reasonableness limitation on the period of incarceration.[2]

## 5.    Intervening Decisions

Our consideration of the question of Ly's liberty interest is complicated by two decisions that have come down since this case was briefed and argued. In *Demore v. Kim*, 123 S. Ct. 1708 (2003) the Supreme Court held that §1226(c) was not unconstitutional in requiring the detention of deportable aliens pending their deportation. It specifically indicated that such detentions were usually relatively brief, *see id.* at 1720-21, but it did not specifically hold that any particular length of time in a specific case would be unreasonable or unconstitutional. The case is distinguishable to the extent that Kim was a deportable alien for whom deportation, to South Korea, was a real possibility, and he could avail himself of such liberty at any time. That is not the case with Ly.

In *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003)(en banc), decided shortly before *Kim*, our circuit held that even an excludable alien (presumptively a person with less rights than Ly) could not be held beyond six months without an individual hearing, by extension of the holding in *Zadvydas*, in the case of an excludable alien who could not be removed to Cuba. The cross currents of the two decisions are somewhat complex. If *Rosales-Garcia* stands for the proposition that *any* alien facing the process of deportation is entitled to a specific hearing within six months absent special justification, the decision is inconsistent with *Kim*, which specifically authorized such detention in the circumstances there. To the extent that *Kim* would appear to authorize

---

[2]*Zadvydas* does suggest that in extraordinarily limited circumstances, *e.g.*, dangerous mental illness, civil detention for an indefinite period or without possibility of removal might be warranted. However, those circumstances are sufficiently rare that requiring individualized bond hearings is unnecessary. Rather, the INS can argue such extreme circumstances in opposition to a detainee's petition for habeas relief.

indefinite detention for persons in pre-removal proceedings, it could compel a conclusion contrary to *Rosales-Garcia* in this case. However, the Court's discussion in *Kim* is undergirded by reasoning relying on the fact that Kim, and persons like him, will normally have their proceedings completed within in a short period of time and will actually be deported, or will be released. That is not the case here.

Because of the differences between Ly's case and these opinions, we hold that neither of them affirmatively compels a different decision here.

Finally, we note that the government has not offered a strong and special justification, exceeding a mere desire to protect the community, that would justify indefinite detention. If, as is *not* the case here, the government were to attempt to justify indefinite detention by means of a showing of a "strong and special justification" under *Zadvydas*, then due process would require a hearing on that issue.

## 6.    Reasonable Time Limitation

We must next define a reasonable time limitation for pre-removal detention, and finally determine whether or not the INS acted reasonably in this case. A bright-line time limitation, as imposed in *Zadvydas*, would not be appropriate for the pre-removal period; hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant. In the absence of a set period of time, courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings.

In this case, the district court determined that incarceration for one and one-half years as part of a civil, nonpunitive proceeding when there was no chance of actual, final removal, was unreasonable. We agree. As of the September 21, 2000 opinion and recommendation of the

magistrate judge, Ly had been imprisoned for a year and a half with no final decision as to removability in the case. That decision as to removability was not made until nearly a month later, after the magistrate judge recommended granting the writ of habeas corpus. Ly served criminal sentences for his two convictions of a total of 12 months; he spent considerably more time than that in INS custody awaiting a determination on removal.

Further, any detention under IIRIRA must be reasonably related to the goal of the statute. *Zadvydas*, 533 U.S. at 699-700. The goal of pre-removal incarceration must be to ensure the ability of the government to make a final deportation. The danger is that a criminal alien, upon receiving notice of deportation proceedings, will flee. The actual removability of a criminal alien therefore has bearing on the reasonableness of his detention prior to removal proceedings. *Zadvydas*, 533 U.S. at 690. Because Ly was not removable, a year-and-a-half imprisonment awaiting removal proceedings was especially unreasonable.

The INS incorrectly asserts that it has an interest in "ensuring that a final removal order is actually entered against an individual who is *prima facie* removable because of multiple criminal convictions." The INS does not need the alien to be physically present in order to enter a final removal order. IIRIRA penalizes aliens who fail to appear at a removal proceeding with both an automatic entry of an order of removal *in absentia*, 8 U.S.C. § 1229a(b)(5), and prevents such aliens from applying for cancellation of removal or adjustment of status, remedies normally available to an alien who has been ordered removed. 8 U.S.C. § 1229a(b)(7) (West 1999).

As the INS points out, Ly is at least partially responsible for the length of the proceedings. Ly applied for cancellation of removal and for change of status, and was responsible for at least one rescheduled hearing, due to the late filing of briefs by Ly's counsel with the immigration judge. We are not

unsympathetic to this argument; however, we conclude that the INS must still act promptly in advancing its interests. In this case, the magistrate judge found that the time taken without a decision was exceptional; indeed, the immigration judge only rendered a decision after the magistrate judge acted, and an additional month had passed, even though the hearing before the immigration judge had been months earlier.

Under the rule we adopt today, courts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay "unreasonable" and order their release.

However, appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

Finally, there is a question of institutional competence. By not requiring individualized bond hearings, federal courts undertake to supervise the reasonability of detention only via the habeas process. This is the approach recommended by *Zadvydas*; of course, there the Court was able to establish a six-month rule that is easily administrable by courts.

Certainly the INS is best situated to know which criminal aliens should be released, and federal courts are obviously less well situated to know how much time is required to bring a removal proceeding to conclusion. However, three factors tip the balance in favor of court supervision. First, *Zadvydas* requires it. Second, those aliens not granted bond hearings would still file habeas petitions; since habeas review of detention is not foreclosed by IIRIRA, federal courts will still be asked to review detention. Third, although an easily administrable bright-line rule cannot be based on time, given the inevitable elasticity of the pre-removal period, courts are familiar with and regularly assess reasonableness as a legal standard. Our rule requires the INS to act reasonably: when actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a "strong special justification," constituting more than a threat to the community, that overbalances the alien's liberty interest. *Zadvydas*, 533 U.S. at 690. Although it lacks a bright line, this rule is administrable by courts hearing habeas petitions arising from mandatory detention under § 236.

## B. Procedural Due Process

Ly also asserts that he has received insufficient process to protect his Fifth Amendment liberty interest. Were we to construe the statute as permitting indefinite detention, additional process would be required. *Zadvydas*, 533 U.S. at 692. If the INS were to assert a "strong special justification," consisting of more than convenience in removal or general community protection, to support indefinite detention, then a hearing would be required. *Id.* at 690. However, the INS makes no such showing here. Because we construe the statute to include a reasonable time limitation in bringing a removal proceeding to conclusion, additional process to protect that liberty interest is not required.

### III

We hold that the INS may detain *prima facie* removable criminal aliens, without bond, for a reasonable period of time required to initiate and conclude removal proceedings promptly.    When actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a government showing of a "strong special justification," constituting more than a threat to the community, that overbalances the alien's liberty interest. The reasonableness of the length of detention is subject to review by federal courts in habeas proceedings, as stated by *Zadvydas*.  Because there is no strong special justification in this case, because the period of time required to conclude the proceedings was unreasonable, and because actual removal was not foreseeable, we AFFIRM the grant of the writ of habeas corpus.

### CONCURRING IN PART, DISSENTING IN PART

HAYNES, District Judge, concurring in part and dissenting in part.  I concur in the majority's holding that Ly's incarceration for almost a year and a half was unreasonable and justifies issuance of the writ of habeas corpus. Yet, for several reasons, I respectfully dissent from the majority's reasonableness standard, due to its lack of any numerical time limitations for the detention of those lawful permanent resident aliens who object to their removal under 8 U.S.C. § 1226(c).  In sum, Supreme Court and Sixth Circuit precedents have set time limits on the detention of aliens who have been ordered to be deported or aliens who have been declared excludable.  Time constraints, consistent with the Supreme Court and this Circuit's decisions,  should be set for the detention of lawful permanent resident aliens who are object to their removal proceedings.    The majority's substantial reliance upon *Zadvydas v Davis*, 533 U.S. 678 (2001) is misplaced because *Demore v. Kim* 123 S. Ct. 1708 (2003) is the controlling decision for the detention of lawful permanent resident aliens, such as Ly.

Ly was born on April 16, 1968 in Saigon, Vietnam.  His family members include soldiers in the South Vietnamese Army who fought with United States military forces during the Vietnam war.  Refusing to serve in the communist army in Cambodia and avoiding persecution, Ly fled to Thailand where he remained in a refugee camp for approximately two years.  The United States Attorney General granted Ly refugee status when he entered the United States.  Ly became a permanent United States resident on December 21, 1987, and has since lived in the United States with other family members who are also permanent residents.

On May 11, 1999, the Immigration and Naturalization Services ("INS") initiated removal proceedings against Ly

based upon a 1993 conviction for use of a counterfeit credit card to purchase in excess of $2,000 of goods and services. Ly pled guilty and the district court sentenced him to four months incarceration and two years supervised release. The district court also approved the prosecution's recommendation to reduce Ly's sentence for his minor role in the criminal transaction, his cooperation, and his immediate confession. Ly successfully completed his supervised release on April 27, 1995.

In 1999, Ly had another conviction for bank fraud because he passed a fraudulent bank check in a check-kiting scheme. In the pretrial proceeding of his second conviction, the district court determined that Ly was neither a serious flight risk nor a threat to the community and released Ly on a personal bond. For this conviction, Ly was sentenced to eight months and ordered to make restitution to the victim. Ly fully completed that criminal sentence.

These two convictions provide the basis for his removal for crimes of moral turpitude under § 237(a)(2)(A)(ii) of IIRIRA. Ly asserts that he would have been eligible for cancellation of removal under the former 212(c) waiver because prior to 1996, Ly's conviction was not considered an "aggravated felony" under the Immigration and Naturalization Act ("INA"). At the time of his 1993 plea, an "aggravated felony" was defined under § 101(a)(43)(M) of the INA, as a crime causing a $200,000 loss to the victim for a crime of fraud or deceit. In 1996, three years after Ly's plea, Congress retroactively expanded the definition of "aggravated felony" under § 101(a)(43)(M) of the INA by requiring only a $10,000 loss to the victim, thereby retroactively classifying Ly as an aggravated felon and thus, rendering him ineligible for cancellation of his removal. The immigration court found Ly removable as an aggravated felon under section 101(a)(48)(U) of the INA.

Vietnam, Ly's native country, does not have an repatriation treaty with the United States and Ly has not been removed.

As a result of his removal proceeding, Ly had been detained for over 500 days prior to the district court's order granting the writ. With the lack of a repatriation treaty with Vietnam, Ly's removal is unlikely for the reasonably foreseeable future.

In *Kim*, the Supreme Court held that mandatory detention of lawful permanent aliens residents who are subject to removal under 236(c) the Illegal Immigration and Immigrant Responsibility Act of 1996 ("IIRIRA") is constitutionally permissible for the brief period of time necessary for their removal proceedings. The Supreme Court's core conclusions were two-fold. First, the Court held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as [Kim] be detained for the **brief period** necessary for their removal proceedings" 123 S. Ct. at 1712. (Emphasis added). With this limitation, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id* at 1721-22. Thus, "a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings, is governed by these cases." Id. at 1722.(citations omitted). In other parts of its opinion, the majority in *Kim* emphasized that the detention was under Section 236(c) for a "limited period" id. at 1722 and "very limited time of ... detention," Id at 1721 n.12.

*Kim*'s holding clearly was premised , in significant part, upon its finding that the initial detention under Section 236(c) was for "a brief period necessary for their removal proceeding" Id. at 1712. The majority in *Kim* specifically cited the average length of time of a Section 236(c) detention prior to a disposition of the removal issue :

In the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*. The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to Section 1226(c), removal proceedings are completed in an average

time of 47 days and median of 30 days. Brief for Petitioners 39-40. In the remaining 15% of cases, in which that alien appeals the decision of the Immigration Judge to average of four months, with a median time that is slightly shorter. *Id.*, at 40.

*Kim*, at 1720-21 (emphasis added).

To be sure, *Kim* addressed only the constitutionality of Section 236(c) mandating detention of lawful permanent aliens where the alien did not contest his detention. *Kim* did not address any outside time limits on that detention. Here, Ly contests his deportation to Vietnam that lacks a repatriation treaty with this country. The majority's holding here sets a limitation of detention, but only by a reasonableness standard, without any numerical time limits.

In my view, to set the constitutional standard for the length of detention for those lawful resident aliens who contest their deportation, we should borrow the time limits in *Kim* that the Supreme Court cited in upholding Section 236(c) for detention of lawful permanent resident aliens. These limitations would be presumptive time limits for detention of lawful resident aliens who object to their deportation and such limits are supported by Supreme Court and Sixth Circuit decisions in other alien deportation decisions. In a word, any time periods that exceed the time limits cited in *Kim* would be presumptively unconstitutional.

Implicit in *Kim* is that a detention of a lawful permanent resident subject to removal under Section 236 (c) for up to 47 days is permissible. Borrowing *Kim's* time limits, we should hold that any contested detention of a lawful permanent resident under Section 236(c) for more than forty seven (47) days is presumptively unreasonable and therefore, unconstitutional, absent an individualized assessment of flight and dangerousness. If the lawful permanent alien appeals an adverse decision, the presumptive time limit would be 120 days. These time limitations that are cited in *Kim,* reflect

actual administrative experiences for conducting these removal hearings. If there were justifiable cause for detentions beyond these limits, then the agency must provide the alien with a statement of reasons for the delay and the opportunity for a due process hearing. The alien could then assess whether he can successfully challenge the agency's stated reasons for continued detention at the due process hearing before the agency or later in court.

The Supreme Court set a presumptive standard of 90 days and an outside limit of six months detention for aliens who have been ordered removed absent a showing of a "strong special justification" for detention. 533 U.S. At 690, 701. In *Rosales-Garcia v. Holland*, 322 F.3d 386, 415 (6th Cir. 2003) **(en banc)** this Court imposed, as a matter of law, a six months limitation for detention of excludable aliens. Surely, as a matter of law, the initial detention of aliens who are lawfully permanent residents and who challenge their deportation, should be less than six months, the constitution limitation for detained aliens who are unlawfully in this country. Lawful permanent resident aliens who contest their continued detention should have greater due process rights than aliens who have been found to be removable or excludable.

Consistent with *Zadvydas* and *Rosales-Garcia*, for those aliens who do not contest their removal, "if removal is not reasonably foreseeable, the court should hold continued detention" beyond six months "unreasonable". *Zadvydas* 533 U.S. at 699, 701. "After the 6 month period, once the alien proves good reason to believe that there is not significant likelihood of removal in the reasonably foreseeable future, the Government must respond to rebut that showing... This 6-month presumption of course does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has determined that there is no significant likelihood of removal in the foreseeable future." *Id* at 701.

As the circumstances of this appeal reveal, without a judicial time limit, detention of lawful permanent residents could exceed six months. Here, Ly was detained for 500 days. Despite *Kim*, the Appellant agency insists that "Ly's detention pending the completion of his removal proceedings is statutorily authorized under 8 U.S.C. 1226(c)(1)(B) and fully comports with due process under the Supreme Court's decision in *Kim*". (Appellant's motion to vacate at p.4). This expression of the agency's viewpoint of reasonableness counsels the need for numerical time limitations.

Second, in *Kim*, the Supreme Court made it clear that where removal "was not practically attainable," "detention's goal no longer bears a reasonable relation to the purpose for which the individual was committed." *Id* 1719, 1720 citing *Zadvydas*. Thus, for the lawful permanent residents who object to removal to countries to which actual deportation or removal is impractical, as here, the detention hearing should be held promptly or as soon as practicable prior to the expiration of the 47 days of the initial detention.

Third, in *Kim*, the five justices required an individual determination to justify extended detention albeit in different contexts. In his concurring opinion in *Kim,* Justice Kennedy recognized the necessity of a due process hearing after an unreasonable period of detention, stating that:

"As a consequence, due process requires individualized procedures to ensure there is at least some merit to the Immigration and Naturalization Service's (INS) charge and, therefore, sufficient justification to detain a lawful permanent resident alien pending a more formal hearing..."

* * *

For similar reasons, since the Due Process Clause prohibits arbitrary deprivations of liberty a lawful permanent resident alien such as respondent could be

entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.

([A]liens are entitled to be free form detention that is arbitrary or capricious"). **Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.**

123 S. Ct. at 1722 (Kennedy, J., concurring). (emphasis added). Although in an unpublished decision, the Second Circuit described Justice Kennedy's concurring opinion as "explicating his understanding that the majority opinion may allow a challenge to detention when, for example, there has been unreasonable delay by the INS." *Zgombic v Farquharson*, 68 Fed. Appx. 2, 2003WL212443248 * 1 (2nd Cir. 2003).

Four other Justices in *Kim*, likewise would require an individualized due process hearing even before the initial detention period. "Due process calls for an individual determination before someone is locked away." 123 S. Ct at 1733 (Souter, Stevens and Ginsburg, JJ. concurring in part, dissenting in part). "The statute would require the Government to permit a detained alien to seek an individualized assessment of flight risk and dangerousness as long as the alien's claim that he is not reportable is (1) not interposed solely for purposes of delay and (2) raises a question of "law or fact" that is not insubstantial" 123 S. Ct. at 1747, (Breyer, J. concurring in part, dissenting in part).

Here, Ly asserts an express claim that he was entitled to a due process hearing and an individual assessment of his risk of flight and his perceived dangerousness to justify his continued detention. For a lawful permanent alien resident

who has been detained more than forty seven (47) days without a determination of his or her removeability and who objects to his deportation, I would hold such an alien resident is entitled to a due process hearing and an individual assessment of his risk of flight and /or dangerous to justify his or her continued detention.

Fourth, the majority opinion places substantial reliance on *Zadvydas* that involved aliens who had been ordered to be deported and whose detention was "potentially permanent." *Kim* expressly distinguished *Zadvydas* as applicable to aliens who have been ordered to be deported and whose detention is a potentially permanent and indefinite.

Zadvydas is materially different from the present case in two respects.

First, the aliens there challenging their detention following final deportation orders were ones for who removal was "no longer practically attainable," such that their detention did not serve its purported immigration purpose. In contrast, because the statutory provision at issue in this case governs detention of deportable criminal aliens pending their removal proceedings, the detention necessarily serves the purpose of preventing the aliens from fleeing prior to or during such proceedings. Second, while the period of detention at issue in Zadvydas was "indefinite" and "potentially permanent," the record shows that 1226(c) detention not only has a definite termination point, but lasts, in the majority of cases, for less that the 90 days the Court considered presumptively valid in Zadvydas.

123 S. Ct. at 1719.

In my view, *Kim* is the more relevant and controlling authority here because Ly is a lawful permanent resident alien who objects to his removal and his continued detention. Thus, the majority's substantial reliance on *Zadvydas* is

misplaced in that the majority overlooks Ly's status and his opposition to his removal. *Kim* is the controlling authority here for removal of lawful permanent residents who object to their removal. *Kim* imposes a constitutional limitation that any detention must be "brief" and "limited" as well as reasonable.

For these reasons, I respectfully dissent.