NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0192n.06
Filed: March 23, 2006

**Nos. 03-3245, 02-3851**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MICHAEL DVORKIN,  )
 )
    Petitioner-Appellee,  )
 )
 )    ON APPEAL FROM THE UNITED
    v.  )    STATES DISTRICT COURT FOR
 )    THE NORTHERN DISTRICT OF
ALBERTO GONZALES, Attorney General,  )    OHIO
 )
    Respondent-Appellant.  )
 )

_____

BEFORE: SILER and GRIFFIN, Circuit Judges; and TARNOW, District Judge.[*]

    PER CURIAM.

    Two consolidated cases are before the Court. In case 02-3851, the Attorney General appeals the district court's grant of Michael Dvorkin's petition for habeas corpus, holding that the mandatory detention of Dvorkin during the pendency of his removal proceedings pursuant to section 236(c) of the Immigration and Nationality Act was unconstitutional. In case 03-3245, the Attorney General appeals the award of attorney fees against the government pursuant to the Equal Access to Justice Act ("EAJA"), arguing the district court lacked jurisdiction, the award was premature, and the government's actions were substantially justified.

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

Recent developments in case 02-3851 render it moot.[1]  Accordingly, in an order contemporaneous with this opinion, we sever the two cases and vacate the district court's judgment in case 02-3851. With respect to case 03-3245, we conclude that the government was substantially justified in its actions and, therefore, reverse the award of attorney fees.

I.

Petitioner Michael Dvorkin, a native of the former U.S.S.R., has been a lawful permanent resident of the United States since March 24, 1991. In September 1998, an Ohio jury found Dvorkin guilty of five felony counts; he was subsequently sentenced concurrently to serve ten months incarceration for the charges of receiving stolen property, forgery, and obstruction of justice, and a separate one-year term of imprisonment for tampering with evidence. On December 26, 2000, while Dvorkin was in the penal custody of Ohio, the Immigration and Naturalization Service ("INS" or "DHS")[2] issued a Notice to Appear, charging that Dvorkin was subject to removal from the United States pursuant to § 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"). Upon

---

[1]On July 22, 2005, Dvorkin's application for adjustment of status pursuant to INA § 245, codified at 8 U.S.C. §§ 1255, 1182(h), was granted, and Dvorkin's status was adjusted to that of a legal permanent resident. The Department of Homeland Security ("DHS") waived its right to appeal the Court's decision. As a result, Dvorkin is no longer in removal proceedings nor subject to detention pursuant to INA § 236, 8 U.S.C. § 1226.

Pursuant to these events, Dvorkin submitted a notice of final decision and suggested that the issue contained in case 02-3851–whether pre-hearing detention violates Dvorkin's due process rights–is moot. The DHS has moved to sever the two cases and remand case 02-3851 to the district court with instructions to vacate its previous decision. As discussed below, we agree that the issue is moot and grant the DHS's motion in a separate order.

[2]The Homeland Security Act of 2002 abolished the INS and all responsibility was transferred to the newly established Department of Homeland Security ("DHS"). Because Dvorkin's case spans the period of change, both titles are utilized interchangeably in this opinion.

his release from state custody on April 3, 2002, Dvorkin was transferred into custody by the INS

pursuant to § 236(c) of the INA. The government refused to hold a bond hearing for Dvorkin, citing

its authority under INA § 236(c)(1)(b).[3] In response, Dvorkin filed a petition for writ of habeas

corpus in the district court, challenging the constitutionality of INA § 236(c) as applied and seeking

to enjoin his detention without the opportunity to apply for bond. The district court granted the

petition and held that INA § 236(c) was unconstitutional as applied to Dvorkin and ordered the

government to afford Dvorkin a bond hearing before an immigration judge. After the immigration

court conducted a hearing in accordance with the district court's order, Dvorkin was released on

bond. The government timely appealed.

Dvorkin also filed a Fee Application under the EAJA in district court, contending that the

government's action in detaining him without an opportunity to apply for bail was not substantially

justified, and no special circumstances existed to render an award of fees and costs unjust. The

---

[3]The applicable statute governing the custody and detention of criminal aliens provides, in pertinent part, as follows:

The Attorney General shall take into custody any alien who . . .

\* \* \*

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . .

\* \* \*

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226.

government sought a stay of the motion for fees, which the district court denied on September 13, 2002. The district court thereafter granted Dvorkin's EAJA motion, holding that the government was not substantially justified and did not have a constitutional duty to defend the statute. The government filed a notice of appeal of the district court's award of attorney fees and subsequently filed an unopposed motion to consolidate the merits and the EAJA appeal. We granted the motion and held the consolidated cases in abeyance pending the resolution of *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003).

Meanwhile, during the course of this appeal, Dvorkin's application for adjustment of status pursuant to INA § 245, codified at 8 U.S.C. §§ 1255, 1182(h), was granted, and Dvorkin became a legal permanent resident. On October 7, 2005, the government moved to sever the two cases and remand case number 02-3851–the merits of the appeal–back to the district court with instructions to vacate its previous decision, as the case and controversy was moot. Further, the government also requested that we retain jurisdiction over the EAJA issue in case number 03-3245.

Now, both cases are ripe for resolution.

## II.

First, we will address the joint contention of the parties that case number 02-3851 is moot. "Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotation marks and citations omitted). This requirement exists "through all stages of federal judicial proceedings, trial and appellate." *Id.* A case is moot when the issue presented is no longer "live" or the "parties lack a legally cognizable interest in the outcome." *L.A. County v. Davis*, 440

U.S. 625, 631 (1979) (citation omitted). Where interim relief or events have completely eradicated the effects of an alleged violation of law and there is no reasonable expectation that the violation will recur, a case is moot. *Id.* Although the removal of an alien does not moot a pending appeal, *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 701 n.1 (6th Cir. 2005) (citation omitted), the grant of an alien's petition while the petition is in the judicial process may conclusively moot the case and controversy, *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001) (holding action was moot after INS granted petitions of named spouses).

If a case becomes moot pending appeal, the appellate court lacks the power to address the merits of the case, but may still enter judgment on matters ancillary thereto and award costs, vacate the judgment on appeal, and dismiss the appeal. *See U.S. Bancorp Mortgage Co. v. Bonner Mill P'ship*, 513 U.S. 18, 21-22 (1994). Accordingly, although the merits of the government's appeal have been mooted by Dvorkin's status change, we will address the district court's award of EAJA attorney fees in case 02-3851.

III.

This court reviews a district court's decision to award or deny attorney fees pursuant to the EAJA for abuse of discretion. *Townsend v. Comm'r of Soc. Sec.*, 415 F.3d 578, 581 (6th Cir. 2005). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001) (quotation marks and citation omitted).

In case 02-3851, the government argues that this Court should reverse the attorney fees award pursuant to the EAJA because (1) the decision on the merits of Dvorkin's petition was not final, rendering the district court without jurisdiction; (2) other binding cases addressing the merits of the case were pending before this Court and the Supreme Court, and the district court award was therefore premature; and (3) the position of the government was substantially justified and special circumstances made the award unjust. Dvorkin argues that the fee award pursuant to EAJA was not premature or inconsistent with other cases and, regardless, was not an abuse of the district court's discretion. Contrary to Dvorkin's contention, the position of the government was substantially justified.[4]

---

[4]Because we reverse the award of EAJA attorney fees on other grounds, we decline to address the government's contention that the award was premature. The EAJA provides that a prevailing party in certain federal court proceedings may recover attorney fees and costs from the government. 28 U.S.C. § 2412. "A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court" its application for reimbursement. 28 U.S.C. § 2412(d)(1)(B); *Scarborough v. Principi*, 541 U.S. 401, 408 (2004) ("[Section] 2412(d)(1)(B) sets a deadline of 30 days after final judgment for the filing of a fee application."). "Final judgment" is defined by the EAJA as "a judgment that is final and not appealable." *Townsend v. Comm'r of Soc. Sec.*, 415 F.3d 578, 581 (6th Cir. 2005) (quoting 28 U.S.C. § 2412(d)(2)(G)).

Because the thirty-day time period had not yet begun, the government contends that the district court lacked jurisdiction to address Dvorkin's EAJA motion. This is incorrect. This Court recently overruled the "jurisdictional" aspect of final judgments in *Townsend*, stating:

> [O]ur past precedent characterized the EAJA's time limitation for fee applications as jurisdictional . . . . This precedent, however is overruled by the Supreme Court's recent decision in *Scarborough v. Principi*, 541 U.S. 401 [ ] (2004), where the Supreme Court held that the EAJA's "30-day deadline for fee applications and its application-content specifications are not properly typed 'jurisdictional.'" *Id.* at 1865. Specifically, the Court concluded that 28 U.S.C. § 2412(d)(1)(B) does not involve subject matter jurisdiction but instead addresses "a mode of relief (costs including legal fees) ancillary to the judgment of a court that has plenary

The EAJA provides in pertinent part that a court "shall award to a prevailing party other than the United States fees and other expenses" in any civil action brought by or against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government's position with regard to section 2412(d)(1)(A) is "substantially justified" if it is "'justified in substance or in the main'–that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see United States v. One 1985 Chevrolet Corvette*, 914 F.2d 804, 808 (6th Cir. 1990). The *Pierce* court further elaborated that "a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2. Objective indicia, including "the stage in which the proceedings were resolved and the legal merits of the government's position[,] may be relevant in assessing a district court's determination of reasonableness." *United States v. Real Property Located at 2323 Charms Road, Milford Twp., Oakland County, Mich.*, 946 F.2d 437, 440 (6th Cir. 1991) (citing *Pierce*, 487 U.S. at 568-70).

The question therefore becomes whether the government was substantially justified in defending Dvorkin's detention pursuant to 8 U.S.C. § 1226. We conclude that it was. The Second

---

'jurisdiction of [the civil] action' in which the fee application is made." (citations omitted).

415 F.3d at 581-82; *see Harmon v. United States ex rel. Farmers Home Admin.*, 101 F.3d 574, 587 (8th Cir. 1996) (noting that EAJA attorney fees award may have been premature, but declining to make it a question of jurisdictional significance).

Circuit recently dealt with this issue in *Vacchio v. Ashcroft*, 404 F.3d 663 (2d Cir. 2005). The

*Vacchio* court held that "there is no doubt that the Government is entitled–if not obligated–to put

forth a good faith effort to defend the constitutionality of federal laws, especially those that have

never been found unconstitutional." 404 F.3d at 675-76. The court stated that, although "Vacchio

makes an arguable case [regarding alien deportability] . . . the issue is far from settled law, the

Government's legal argument is far from unreasonable, and it thus cannot be said that the

Government's position on the question is not substantially justified." *Id.* We agree.

In this case, the district court's grant of habeas corpus predated the Supreme Court decision

*Demore v. Kim*, 538 U.S. 510 (2003), which held that § 1226(c) was at least facially constitutional,

and the Sixth Circuit decision *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003), which held that detention

pursuant to § 1226 must be reasonable. Although the merits of Dvorkin's petition are not before us,

the subsequent case law clearly evidences that the constitutionality and application of the statute was

far from settled law. The government's defense of the statute's constitutionality had a reasonable

basis and, thus, was substantially justified.

Dvorkin also contends that the government's specific actions, namely, utilizing an automatic

stay provision after the immigration judge set bond, necessitated additional legal fees that are

compensable by the EAJA motion. Although the government's actions were undermined by its

subsequent failure to appeal the immigration judge's decision and lack of articulable reasons that

Dvorkin constituted a flight risk, we cannot conclude that the government's position was not

substantially justified. *Cf. Vacchio*, 404 F.3d at 677 (holding that "despite our doubts over the INS's

actions, we are not able to conclude that the Government's position was not 'substantially justified.'").

IV.

For these reasons, we reverse the district court's award of attorney fees and hold that the government was substantially justified in defending the constitutionality of 8 U.S.C. § 1226(c) in case 03-3245.

**ARTHUR J. TARNOW, District Judge, concurring in part and dissenting in part.** I concur in the decision to reverse the district court's award of attorney fees on the ground that the government was substantially justified in defending the constitutionality of § 236(c). However, I would remand the case to the district court for a determination of whether or not attorney fees are appropriate under the EAJA. Remand is appropriate because the district court should determine whether or not the government was substantially justified in defending § 236(c) as applied to Dvorkin under the specific facts of the case.

At the time he was taken into custody, Dvorkin was a lawful permanent resident of the United States facing the prospect of prolonged pre-hearing detention. The Supreme Court had not yet issued its decision in *Demore v. Kim*, 538 U.S. 510 (2003), which held that § 236(c) was facially constitutional. However, this Court had not yet issued its decision in *Ly v. Hansen*, (6th Cir. 2003), which held that even if § 236(c) is constitutional, pre-hearing detention must be reasonable, and that detainees are entitled to seek *habeas* relief when facing the prospect of prolonged or indefinite pre-hearing detention.

The majority relies on these facts for the proposition that at the time the constitutionality of Dvorkin's *detention* was in question, the constitutionality of the *statute* was far from settled, and therefore the government was substantially justified in defending the facial constitutionality of § 236(c). However, that conclusion does not accurately reflect the issue before the Court. The district court's decision in this case should be reversed specifically because it based its determination as to EAJA fees only on the justification for the government's defense of § 236(c) as a whole. Because

it based its decision on the defensibility of the statute, the district court did not analyze the government's justification for its defense of Dvorkin's detention without bond.

Dvorkin's petition for writ of *habeas corpus* challenged the constitutionality of § 236(c) *as applied* to his detention without the opportunity for bond. The petition did not pose a facial challenge to the constitutionality of § 236(c). The district court held that § 236(c) was facially unconstitutional, but never reached the specific question posed in this appeal, which is: assuming § 236(c) to be facially constitutional, was the government substantially justified in vigorously defending the mandatory detention of Dvorkin for a prolonged and perhaps indefinite period under the authority of the statute?

One of the government's positions, that § 236(c) is constitutional, was ultimately proven to be justified by the Supreme Court's decision in *Demore*. However, the government's second position, that it could subject Dvorkin to the prospect of indefinite detention, was perhaps never substantially justified, as this Court concluded in *Ly*. In other words, even if § 236(c) is generally constitutional, the district court may still conclude that its application in this particular case was not substantially justified, and that Dvorkin's counsel is entitled to EAJA fees.

The remedy chosen by the majority, reversal without remand, produces an anomalous result. Specifically, under the majority's holding, by successfully challenging the terms of his detention during the early stages of his detention, Dvorkin forfeited counsel's ability to recover attorney fees under the EAJA. On the other hand, a pre-hearing detainee who waits longer to challenge the terms of their detention may be allowed to recover fees because it would be easier to show that the length of the wrongful detention rendered it unreasonable under *Ly*. Attorneys for detainees such as

Dvorkin would be confronted with the difficulty of choosing to wait longer to file a *habeas* petition under *Demore* and *Ly*, so as to be assured a fee, at the expense of their client remaining in custody.

This problem is magnified by the fact that the average length of pre-hearing detention under § 236(c) is approximately 47 days. In *Demore*, the Supreme Court observed:

> Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*. The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter.

*Demore*, 538 U.S. at 529 (internal citations omitted).

In this case, Dvorkin was taken into custody on April 3, 2002. Twenty-three days later, on April 26, 2002, he filed his petition for *habeas corpus*. Fifty-nine days after he was taken into custody, on May 31, 2002, the district court granted his petition. Approximately 62 days after his detention began, on June 5, 2002, Dvorkin was released on bond. Therefore, the length of Dvorkin's detention appears to have fallen within the "average" range for pre-hearing detainment under § 236(c).

Under the majority's holding, attorneys for detainees such as Dvorkin, who face potentially wrongful indefinite detention, would never be entitled to EAJA fees. Unless the inquiry as to EAJA fees asks whether or not the government was substantially justified in defending the *application* of § 236(c) under specific circumstances and as to specific detainees, counsel would never be able to prove that the government was not substantially justified in defending its position. The government

would only have to rest on its facial defense of the statute, rather than its application, in order to avoid an EAJA fees award.

In *Scarborough v. Principi*, 541 U.S. 401, 406 (2004), the Supreme Court described the purposes of the EAJA as follows:

> Congress enacted the EAJA to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government. [The purpose of the Act is] to diminish the deterrent effect of seeking review of, or defending against, governmental action.

*Scarborough*, 541 U.S. at 406 (internal quotation marks and citations omitted).

Under the majority's holding, the impossibility of obtaining EAJA fees would deter attorneys from taking cases on behalf of individuals whose rights were violated by the Federal Government. This outcome is inconsistent with the purposes of the EAJA.

On remand, the district court should address the anomalous situation created by the timing of the *Demore* and *Ly* decisions in relation to this case. Dvorkin, whose detention was lawful under *Demore*, but potentially unreasonable under *Ly*, should have the opportunity to convince the district court that he is entitled to EAJA fees.

I agree with the Court's conclusion that the district court erred by holding that the government's defense of § 236(c) was not substantially justified. However, I would remand this case to the district court to address the question of whether or not the government's defense § 236(c) as applied to Appellee was substantially justified.