JILL PRYOR, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s decision to vacate the district court’s order denying Maxi Dinga Sopo’s 28 U.S.C. § 2241 petition and to remand for entry of judgment in Mr. Sopo’s favor, ordering that Mr. Sopo promptly receive an individualized bond hearing. I join fully in Section V of the majority opinion, which holds that, as a matter of constitutional avoidance, 8 U.S.C. § 1226(c) must be read to contain an implicit temporal limitation against unreasonably prolonged detention of a criminal alien without a bond hearing. But I must dissent in part because I disagree with the majority opinion’s approach in Sections VI and VII. Specifically, I would not analyze the reasonability of the duration of an alien’s detention under § 1226(c) using a flexible “case-by-case” approach nor would I place the burden of proof on the alien at the ensuing bond hearing. Instead, I agree with the Second and Ninth Circuits that, after six months’ detention, a criminal alien detained pursuant to § 1226(c) is entitled to a bond hearing at which the government bears the burden of demonstrating the necessity of continued detention by clear and convincing evidence.
I. A Criminal Alien’s Detention under § 1226(c) Becomes Unreasonably Prolonged after Six Months.
A. Background on the Constitutionality of Criminal Alien Detention
The Supreme Court has yet to address directly the constitutionality of unreasonably prolonged detention under § 1226(c), which requires that aliens convicted of certain crimes be held during the pendency of their removal proceedings. The Court has, however, decided two cases that broadly concern the constitutional limits surrounding immigration detention. In Zadvydas v. Davis, the Supreme Court considered a challenge to prolonged detention under a different statute, 8 U.S.C. § 1231(a). 533 U.S. 678, 683, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Once an alien has received a final order of removal, the government typically deports the alien within a 90-day “removal period.” Id. at 682, 121 S.Ct. 2491, 2498. During this period, § 1231(a) requires the government to keep the alien in custody. Id. at 683, 121 S.Ct. 2491, 2498; *1222 8 U.S.C. § 1231(a)(2). If, after the expiration of the removal period, the alien has not yet been deported, § 1231(a) authorizes the government to continue detaining the alien if certain conditions are met.[1] Zadvydas, 533 U.S. at 683, 121 S.Ct. 2491; 8 U.S.C. § 1231(a)(6).
Applying the doctrine of constitutional avoidance, the Supreme Court read § 1231(a) as containing an implicit temporal limitation on the government’s authority to continue detaining aliens after the 90-day period. Zadvydas, 533 U.S. at 682, 121 S.Ct. 2491. The Court reasoned that the indefinite detention of such aliens could not be justified by the statute’s professed goals of preventing aliens from absconding and of protecting the community. Id. at 690-91, 121 S.Ct. 2491, 2498. As a result, the Court adopted a six-month presumption of reasonability, holding that “[a]fter [a] 6-month period [of detention], once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.” Id. at 701, 121 S.Ct. 2491, 2498. Absent such a showing, the alien must be released. Id.
After Zadvydas, in Demore v. Kim the Supreme Court considered a facial challenge to the constitutionality of the statute at issue here, § 1226(c). 538 U.S. 510, 514, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). The Court ruled that Congress could, consistent with due process, require the detention of a criminal alien during her removal proceedings without first providing a bond hearing. Id. at 513, 123 S.Ct. 1708. Critically, however, the Court held that the government could only “constitutionally detain deportable aliens during the limited period necessary for their removal proceedings.” Id. at 526, 123 S.Ct. 1708 (emphasis added). It did not address whether Congress could authorize prolonged detention of aliens beyond the period reasonably necessary to complete their removal proceedings.
Justice Kennedy provided the fifth vote for the majority in Demore. His concurring opinion clarified his position that, although the Due Process Clause allows detention without a bond hearing under § 1226(c), it does not permit unreasonably prolonged, detention. Id. at 532-33, 123 S.Ct. 1708 (Kennedy, J., concurring). He noted that “[w]ere there to be an unreasonable delay ... in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.” Id.
Outside of Justice Kennedy’s concurrence in Demore, the Supreme Court has never addressed whether under § 1226(c) the government can detain criminal aliens for an unreasonably prolonged period -of time. But, as the majority opinion here describes, five other circuits have addressed that precise issue. And every one of these circuits has agreed with us that § 1226(c) must be read to contain an implicit limitation against the unreasonably prolonged detention of criminal aliens without a bond hearing, because without such a limitation, detention under § 1226(c) would raise grave constitutional concerns.[2]
*1223 Despite agreeing that § 1226(c) does not permit the government to detain a criminal alien for an unreasonable amount of time without providing a bond hearing, the circuits disagree on how best to determine what constitutes a reasonable (and therefore constitutionally permissible) duration of detention. Those circuits to have addressed the issue have applied one of two methods. The Second and Ninth Circuits use a “bright-line” approach that presumes an alien’s detention to be unreasonable in duration once it passes the six-month mark. See Lora v. Shanahan, 804 F.3d 601, 616 (2d Cir. 2015), petition for cert. filed, 84 U.S.L.W. 3562 (U.S. Apr. 21, 2016) (No. 15-1307); Rodriguez v. Robbins, 715 F.3d 1127, 1139 (9th Cir. 2013). In contrast, the First, Third, and Sixth Circuits have adopted a “case-by-case” "or “flexible” approach that requires courts, on habeas review, to apply a multi-factor balancing" test to determine whether an alien’s detention has become unreasonably prolonged. See Reid v. Donelan, 819 F.3d 486, 500 (1st Cir. 2016); Diop v. ICE/Homeland Sec., 656 F.3d 221, 232-33 (3d Cir. 2011); Ly v. Hansen, 351 F.3d 263, 271 (6th Cir. 2003).
•Under either approach, once the duration of an alien’s detention is determined to be unreasonable, the government must provide an opportunity for the alien to obtain release on bond, usually via an individualized bond hearing before an immigration judge. See, e.g., Lora, 804 F.3d at 616; Diop, 656 F.3d at 233. Significantly, the mere fact that the government has detained an alien for an unreasonable amount of time does not mean that the alien is entitled to release. See, e.g., Rodriguez v. Robbins, 804 F.3d 1060, 1077 (9th Cir. 2015), petition for cert, filed sub norm., Jennings v. Rodriguez, 84 USLW 3562 (U.S. Mar. 25, 2016) (No. 15-1204).). At that point, the government may continue to detain the alien if, after a hearing, it is determined that “detention is still necessary to fulfill [§ 1226(c)’s] purposes of ensuring that [the] alien attends removal proceedings and that his release will not pose a danger to the community.” Diop, 656 F.3d at 231.
The variance among circuits about how best to circumscribe eonstitutionally-pro-blematic detention under § 1226(c) runs deeper than a mere disagreement regarding the proper method of analysis. Circuits disagree not only on the method for determining whether detention has become unreasonable in length, but also on the reasons for adopting one method over another. Most notably, the Third and Sixth Circuits adopted the case-by-case approach because it provides “leeway for expansion or contraction as the necessities of the case and the immigration judge’s caseload warrant.” Ly, 351 F.3d at 271; see also Diop, 656 F.3d at 234 (“Reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case.”). In contrast, while acknowledging that the case-by-case approach suffers from a number of deficiencies, the First Circuit nonetheless adopted the case-by-case approach because it believed that approach “adhere[d] more closely to legal precedent.” Reid, 819 F.3d at 498.
In the face of this disagreement among the circuits, the majority opinion adopts the case-by-case approach, as well as the various rationales of the First, Third, and Sixth Circuits for doing so. Thus, the majority opinion holds that a criminal alien may file a § 2241 petition when he con *1224 tends that his removal proceedings and continued civil detention without a bond hearing have become protracted and thus violate the Due Process Clause. If a district court grants the petition, the government must provide an opportunity for the alien to obtain bond at an individualized bond hearing. In deciding whether to grant relief, the majority opinion instructs district courts to weigh those factors the First, Third, and Sixth Circuits have previously identified. These factors include, but are not limited to: the reasons why removal proceedings have become protracted; whether it will be possible to remove the alien to another country at the end of the removal proceedings; the likelihood that the proceedings will culminate in a final removal order; whether the detention has exceeded the time the alien spent in prison for the crime that rendered her removable; the type of facility in which the alien is being detained; the likely duration of future detention; and the length of the detention to date. In considering the length of an alien’s detention, the majority opinion states that “[t]he need for a bond inquiry is likely to arise in the six-month to one-year window.” Maj. Op. at 1217-18.
After considering the majority opinion as well as the approaches and reasoning of other circuits, I disagree with the majority’s adoption of the case-by-case approach and would instead follow the Second and Ninth Circuits in adopting the bright-line approach, which I conclude is the best method for analyzing prolonged detention of criminal aliens. To explain why, I will begin by discussing why I believe the bright-line approach is superior .to the ease-by-case approach. I will then address separately the First Circuit’s concern that legal precedent compels the adoption of the case-by-case approach, even in the face of that approach’s infirmities.
B. The Bright-Line Approach is Superior to the Case-by-Case Approach.
The case-by-case approach tasks courts with considering a variety of factors in deciding whether a criminal alien has been detained for an unreasonable length of time and thus is entitled to a bond hearing. In theory, the ability to take multiple factors into account when deciding whether an alien’s detention has become unreasonably prolonged allows courts applying this approach to consider the unique exigencies and circumstances of each alien’s case. In practice, however, this methodology— while versatile — is unlikely to result in predictable or consistent outcomes.
The Supreme Court recognized as much in the context of § 1231(a) detention. In Zadvydas the Court adopted a six-month presumption of reasonableness for detention under § 1231(a), acknowledging that it had “adopted similar presumptions in other contexts to guide lower court determinations,” that bright-line approaches benefit “uniform administration in the federal courts,” and that such an approach would limit the occasions when courts would have to make “difficult judgments” regarding whether to release § 1231(a) detainees. 533 U.S. at 700-01, 121 S.Ct. 2491.[3] Relat- *1225 edly, the Second Circuit has observed that “applying] a reasonableness test on a case-by-case basis” frequently causes “pervasive inconsistency and confusion” among district courts. Lora, 804 F.3d at 615. The First Circuit — notwithstanding its decision to adopt the case-by-case approach— agreed with the Second Circuit’s assessment, noting that the case-by-case approach “has resulted in wildly inconsistent determinations.” Reid, 819 F.3d at 497. Unsurprisingly, the Third Circuit’s experience in trying to implement its own case-by-case approach for § 1226(c) detainees has borne out these observations. See Farrin R. Anello, Due Process and Temporal Limits on Mandatory Immigration Detention, 65 Hastings L.J. 363, 396 (2014) (“District court judges in the Third Circuit have applied the reasonableness standard to interpret similar facts in different ways.... ”).
Importantly, the risk that the case-by-case approach will result in unpredictable, inconsistent, or arbitrary outcomes itself raises serious due process concerns. “In its commonest form, substantive due process doctrine reflects the simple but far-reaching principle ... that government cannot be arbitrary.” Richard H. Fallon, Jr., Some Confusions About Due Process, Judicial Review, and Constitutional Remedies, 93 Colum. L. Rev. 309, 310 (1993); accord Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (“The touchstone of due process is protection of the individual against arbitrary action of government.”). Indeed, to the extent that the case-by-case approach results in unpredictable or inconsistent outcomes, it could be regarded as “incompatible with the Rule of Law.” Antonin Scalia, The Rule of Law as a Law of Rules, 56 U. Chi. L. Rev. 1175, 1179 (1989).
We should take these concerns particularly seriously because the arbitrary outcomes in these proceedings threaten to deprive § 1226(c) detainees of their fundamental right to freedom from bodily restraint, which “has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.” Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Lest we forget, aliens detained under § 1226(c)
are treated much like criminals serving time: They are typically housed in shared jail cells with no privacy and limited access to larger spaces or the outdoors. Confinement makes it more difficult to retain or meet with legal *1226 counsel, and the resources in detention facility law libraries are minimal at best, thereby compounding the challenges of navigating the complexities of immigration law and proceedings. In addition, visitation is restricted and is often no-contact, dramatically disrupting family relationships. While in detention, [detainees] have missed their children’s births and their parents’ funerals. After losing a vital source of income, [detainees’] spouses have sought government assistance, and their children have dropped out of college.
Rodriguez, 804 F.3d at 1073. Furthermore, the length of an alien’s detention often “bear[s] no relationship to the seriousness of [her] criminal history” or the merit of her defenses to removal. Id. at 1079.
Although the majority opinion acknowledges these due process concerns, it says very little to assuage them, pushing them aside with the general assertion that “federal courts have the institutional competence to make fact-specific determinations, and they have great experience applying reasonableness standards.” Maj. Op. at 1217. I do not doubt of course the competence of courts to make fact-specific determinations or apply reasonableness standards in general. But I must acknowledge the mounting evidence demonstrating that, in the specific context of § 1226(c) detention and despite the best efforts of judges, courts have been unable to apply flexible reasonableness standards in a manner that generates predictable, consistent, and fair outcomes. Indeed, even while adopting the case-by-case approach, the First Circuit observed, “courts that have adopted the [case-by-case] approach have questioned. the federal courts’ institutional competence to adjudicate these issues.” Reid, 819 F.3d at 498 (internal quotation marks omitted).
The bright-line approach does not raise these due process concerns. Instead, it offers predictability in application and consistency in result that the case-by-case approach could never hope to achieve. After six months, an alien detained under § 1226(c) would be entitled to receive a bond hearing on the necessity of his continued detention. If the government failed to provide such a hearing, the alien would be entitled to habeas relief. The clarity of this mandate would benefit not only detained aliens, who would know to seek redress if the government failed to provide them a hearing after six months’ detention, but also courts, which would not have to engage in a weighing of multiple factors merely to decide whether and when a hearing must be provided. This clarity and predictability is particularly critical in the immigration context, where detainees frequently lack knowledge of the American court system; the resources, financial and otherwise, to obtain an attorney; and “the language skills required to navigate the legal thicket.” Reid v. Donelan, 991 F.Supp.2d 275, 281 (D. Mass. 2014), aff'd in part and vacated in part, 819 F.3d 486 (1st Cir. 2016).
Significantly, the case-by-case approach provides no appreciable benefit to offset the inconsistency, unpredictability, and confusion it begets. The primary advantage of a case-by-case approach is — unsurprisingly — flexibility. But the bright-line approach provides comparable flexibility; it simply comes into play at a different stage of the process.[4] Under the bright- *1227 line approach, criminal aliens are not automatically released after six months. They are merely afforded bond hearings, at which an immigration judge, applying a multi-factor balancing approach, can make individualized determinations concerning whether continued detention is justified. See Guerra, 24 I. & N. Dec. 37, 39-40 (BIA 2006).
In fact, all of the factors the majority opinion instructs courts to consider when applying the case-by-case approach, as well as any other relevant facts and circumstances, could just as well be considered by an immigration judge deciding whether to release a § 1226(c) detainee on bond. See id. at 39 (recognizing that at a bond hearing there is no “limit [to] the discretionary factors that may be considered ... in determining whether to detain an alien pending a decision on ... removal”). In effect, the majority opinion’s case-by-case approach will likely result in the consideration of similar factors in two separate individualized inquiries: once when determining whether an alien is entitled to a bond hearing in the first place and once again when deciding, after such a hearing, whether to release the alien on bond. Indeed, in Reid, the First Circuit acknowledged some overlap. See Reid, 819 F.3d at 498 (“[I]t is ... likely that the evidence and arguments presented in a ‘reasonableness’ hearing before a federal court are likely to overlap at the margins with the evidence and arguments presented at a bond hearing before an immigration court. This inefficient use of time, effort, and resources could be especially burdensome in jurisdictions with large immigration dockets.”). I see no compelling reason why, when deciding whether to afford a bond hearing, it is necessary for federal courts to consider factors that could simply be considered at the bond hearing itself.
What’s more, the majority opinion never adequately explains why flexibility is necessary in deciding the threshold question of whether an alien should receive a bond hearing. The majority advocates a flexible approach because removal proceedings are “complex” and “involve many ... exigencies.” Maj. Op. at 1216. While I do not quibble with the majority opinion’s characterization of the removal process, it seems to me that where flexibility is truly required is in determining whether to release an alien on bond. The complexity of removal proceedings does not explain the necessity of flexibility in deciding the antecedent question of when a detainee becomes entitled to a bond hearing, particularly because the primary consequence of that decision would be the provision of such a hearing.[5]
The majority argues that a flexible approach to deciding when a bond hearing must be held is preferable because “were-we to impose a strict cutoff, a criminal alien could deliberately cause months of delays in the removal proceedings to obtain a bond hearing and then abscond and avoid removal altogether.” Id. at 1216. But this concern conflates the question of whether an alien is entitled to a bond hearing with the question of whether that alien is entitled to release. Again, under the bright-line approach, an alien who deliberately delayed her removal proceedings *1228 would, after six months, be entitled to a bond hearing. But she would not be entitled to release on bond. At the hearing, an immigration judge would consider whether she was dangerous or likely to abscond to avoid removal and then deny her release if she was either. See Lora, 804 F.3d at 616 (holding that an alien must be released unless the government demonstrates, at a bond hearing, that the alien “poses a risk of flight or a risk of danger to the community”). Further, an alien who engaged in intentional delay would be an unlikely candidate for release given that at the bond hearing the immigration judge would have “broad discretion” to continue detaining the' alien because of her use of delay tactics. Guerra, 24 I. & N. Dec. at 39.
Plainly stated, the bright-line approach provides a clear rule of application regarding when § 1226(c) detainees should receive bond hearings, while at the same time providing the flexibility to consider individual circumstances when deciding whether to release those detainees on bond. In contrast, recent history demonstrates that the case-by-case approach risks causing pervasive arbitrariness and inconsistency. We should not require criminal aliens suffering imprisonment to gamble their liberty in an unpredictable process that potentially “leave[s] room for the play and action of purely ... arbitrary power,” particularly when that process yields such a meager benefit. Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Given these considerations, I would follow the Second and Ninth Circuits in adopting the bright-line approach.
C. Legal Precedent Does Not Compel the Adoption of the Case-by-Case Approach.
The majority opinion adopts the case-by-case approach not only for the reasons discussed above, but also because the majority “agree[s] with the First Circuit that the [case-by-case approach] adheres more closely to legal precedent.” Maj. Op. at 1217. Like the Third and Sixth Circuits, the First Circuit applied the case-by-case approach to analyze the reasonability of a criminal alien’s prolonged detention under § 1226(c). Its rationale for doing so, however, differed markedly from that of the Third and Sixth Circuits. In Reid, the First Circuit acknowledged the shortcomings of the case-by-case approach, noting that “[f]rom a ... practical standpoint, ... the [case-by-case] approach employed by the Third and Sixth Circuits has little to recommend it.” 819 F.3d at 497. Nonetheless, the court proceeded to adopt that approach because it “adhere[d] more closely to legal precedent,” concluding that the “practical advantages” of the bright-line approach served only as “persuasive justifications for legislative or administrative intervention, not judicial decree.” Id. at 498 (footnote omitted).
The First Circuit’s analysis turned on a subtle parsing of the statutory purposes undergirding § 1226(c). Like other forms of immigration detention, detention pursuant to § 1226(c) is driven by the broad statutory goals of protecting the public and ensuring that aliens appear for their removal proceedings. Demore, 538 U.S. at 531, 123 S.Ct. 1708 (Kennedy, J. concurring). But § 1226(c) distinguishes itself from other statutory provisions authorizing immigration detention in that it mandates detention for certain aliens. The First Circuit reasoned that this “mandatory treatment of a certain class of criminal aliens” is the “animating force behind § 1226(c).” Reid, 819 F.3d at 497. Thus, the court concluded, any inquiry into the reasonableness of detention under § 1226(c) necessitates separately considering this unique statutory purpose. Id.
As I read it, the First Circuit’s opinion posited that a § 1226(c) detainee challeng *1229 ing the reasonableness of her continued detention must do so in two separate ways. First, she must demonstrate that it is unreasonable to detain her as a categorical matter, that is, her detention cannot be justified merely by the fact that she belongs in the class of aliens covered by § 1226(c). Second, once the categorical purpose surrounding her detention evaporates, she must demonstrate, at a bond hearing, that her detention cannot be justified on an individualized basis.[6] Id.
According to the First Circuit, assessing whether the government may continue detaining an alien as a categorical matter requires conducting an individualized inquiry into the “reasonable presumptions and generic rules” upon which Congress relied in deciding that mandatory detention was necessary. Id. at 499 (internal quotation mark omitted). Courts evaluating the categorical nature of an alien’s detention under § 1226(c) thus should consider whether those presumptions — that the government likely will succeed in removing a criminal alien and will do so in a relatively brief period of time — continue to hold true for the petitioning alien. Id. Because courts applying the bright-line approach never question these presumptions, said the First Circuit, those courts fail to conduct a proper inquiry into whether the categorical nature of the alien’s detention is reasonable. See id. at 497 (characterizing the bright-line approach as a “six-month expiration” rather than an “implicit reasonableness limitation” (internal quotation marks omitted)). Only the case-by-case approach affords courts the opportunity to analyze the presumptions underlying § 1226(c)’s categorical detention; thus, the First Circuit reasoned, only that approach conducts a proper reasonableness inquiry.
But even accepting the First Circuit’s characterization of the reasonableness inquiry, I fail to see how existing precedent inexorably compels courts to adopt the ease-by-case approach. The flaw in the First Circuit’s reasoning is its assumption that the presumptions supporting Congress’s categorical treatment of § 1226(c) detainees can be challenged only on an individualized basis. A presumption certainly may be unreasonable as applied to an individual, but at a certain point, the presumption also becomes unreasonable on a broader scale. According to statistics cited by the Supreme Court, “in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases ... [proceedings are completed in] an average of four months, with a median time that is slightly shorter.” Demore, 538 U.S. at 529, 123 S.Ct. 1708 (citation omitted). Given that the vast majority of removal proceedings are completed within four months, it hardly seems a stretch to conclude that Congress’s presumptions regarding the duration of, and the government’s likelihood of success at, removal proceedings are unreasonable as applied to the small subset of aliens who remain in detention for longer than six months. The First Circuit’s opinion failed to explain why taking a broader view of the reasonableness of Congress’s presumptions is improper. And, notably, the opinion cited no precedent indicating that in *1230 interpreting § 1226(c) courts are required to examine those presumptions on a detainee-by-detainee basis.
To the contrary, the categorical nature of § 1226(c)’s treatment of criminal aliens would seem to warrant a similarly categorical approach to the reasonableness of prolonged detention. A bright-line rule like that adopted by the Second and Ninth Circuits is more consistent with the “specific purpose of § 1226(c) ... to categorically deny bond hearings to a class of aliens.” Reid, 819 F.3d at 499. Indeed, such a rule would categorically deny bond hearings for every § 1226(c) detainee for a period of six months. The case-by-case approach, in contrast, cannot “categorically deny bond hearings” because it provides no limits on when an alien can request a hearing or when a court may provide one. Under the case-by-case approach, an alien could, in theory, request and receive a bond hearing within days after his detention commenced, while others request and receive hearings one month, six months, even one year down the fine. Although a § 1226(c) detainee may be extremely unlikely to receive a hearing so early in his detention, nothing about the case-by-case approach unconditionally precludes that possibility. This seems inconsistent with § 1226(c)’s “categorical and mandatory treatment of a certain class of criminal aliens,” which the First Circuit described as the “animating force” behind that statutory provision. Id. at 497.
Nor is the bright-line approach inconsistent with Demore, as the First Circuit implied. Id. While it is true that “[i]n De-more, the Supreme Court declined to state any specific time limit,” id., I do not infer from that omission that a bright-line rule would be inappropriate. The petitioner in Demore mounted a facial challenge to § 1226(c): as the First Circuit observed, “the petitioner [in Demore] argued that his detention was unconstitutional from the outset due to the categorical nature of [§ 1226(c)’s] mandatory detention regime.” Id. at 493. The Supreme Court therefore had no reason to address whether the petitioner’s detention had been unreasonably prolonged or the best method for making that determination. See Lowden v. Nw. Nat’l Bank & Tr. Co., 298 U.S. 160, 162, 56 S.Ct. 696, 80 L.Ed. 1114 (1936) (observing that the Supreme Court “will not answer abstract questions unrelated to the pending controversy”).
The First Circuit also observed that “[t]he Demore Court ... briefly discussed facts specific to the detainee, such as his request for a continuance of his removal hearing” and inferred from this brief discussion that, given the opportunity, the Court would have adopted the case-by-case approach. Reid, 819 F.3d at 497. But the Supreme Court was not discussing those facts in the context of deciding whether the detainee’s individual circumstances warranted a bond hearing. See Demore, 538 U.S. at 529-30, 123 S.Ct. 1708. As I have already explained, the Supreme Court had no reason to pass on that issue because Demore concerned a facial challenge to the constitutionality of § 1226(c). Instead, the Court was using those facts to distinguish the result in Zadvydas by emphasizing that the indefinite detention at issue there was more constitutionally problematic than the comparatively brief detention authorized by § 1226(c). See id.
Justice Kennedy’s concurrence in De-more is also consistent with the bright-line approach. His concurring opinion noted that “[w]ere there to be an unreasonable delay ... in pursuing and completing deportation proceedings,” a criminal alien might be entitled to a bond hearing. Id. at 532, 123 S.Ct. 1708 (Kennedy, J. concurring). Nothing in the opinion suggested that the inquiry regarding whether there has been an unreasonable delay must be conducted on an individualized basis.[7]
*1231 I also disagree with the First Circuit’s contention that we should ignore the “practical advantages” of the bright-line approach. Reid, 819 F.3d at 498. We are fashioning a legal test for determining when a § 1226(c) detainee becomes entitled to a bond hearing. Whether a test is easily administrable and whether it will generate predictable, consistent results are factors we properly consider — indeed should consider — in choosing the appropriate test. See generally Scalia, supra, at 1179, 1187. And, in fact, the Supreme Court regularly does just that. See, e.g., Virginia v. Moore, 553 U.S. 164, 175, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (“In determining what is reasonable under the Fourth Amendment, we have given great weight to the essential interest in readily administrable rules.” (internal quotation marks omitted)); Ariz. Dep’t of Revenue v. Blaze Constr. Co., 526 U.S. 32, 37, 119 S.Ct. 957, 143 L.Ed.2d 27 (1999) (“The need to avoid litigation and to ensure efficient tax administration counsels in favor of a bright-line standard for taxation of federal contracts.... ”); see also Wos v. E.M.A. ex rel. Johnson, — U.S.-, 133 S.Ct. 1391, 1408, 185 L.Ed.2d 471 (2013) (Roberts, J. dissenting) (“The reasons for drawing a bright line ... are obvious and familiar. Bright lines provide clear notice.... [and] are easy, cheap, and admin-istrable.... ” (citation omitted)).
At bottom, and for the reasons I have already discussed, I do not believe we are compelled by legal authority to adopt the case-by-case approach. And I see no reason to ignore the “practical” concerns that plague it. Because, as the First Circuit recognized, if not mandated by legal precedent the case-by-case approach has “little to recommend it,” Reid, 819 F.3d at 497, I would adopt the Second and Ninth Circuits’ bright-line approach.
II. After Six Months the Government Should Have to Demonstrate the Necessity of Continued Detention by Clear and Convincing Evidence.
Even where, as in this context, some period of prolonged detention is constitutionally permissible, “due process requires ‘adequate procedural protections’ to ensure that the government’s asserted justification for physical confinement ‘outweighs the individual’s constitutionally protected • interest in avoiding physical restraint.’ ” Casas-Castrillon v. Dep’t of Homeland Sec., 535 F.3d 942, 950 (9th Cir. 2008) (quoting Zadvydas, 533 U.S. at 690, 121 S.Ct. 2491). The majority opinion applies the bond procedures governing non-criminal aliens detained under 8 U.S.C. § 1226(a)[8] to criminal aliens detained un *1232 der § 1226(c), presumably satisfied that these procedures — -which place the burden of proof on the alien at bond proceedings— fulfill the dictates of due process. See 8 C.F.R. § 1236.1. I disagree.
Noticeably absent from the majority opinion’s discussion of the appropriate burden of proof is any mention of what it previously described as “the profound liberty interest at stake,” Maj. Op. at 1212— a striking omission considering the Supreme Court’s instruction that “due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake are both particularly important and more substantial than mere loss of money.” Cooper v. Oklahoma, 517 U.S. 348, 363, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (alterations and internal quotation marks omitted). It would be hard to overstate the importance of the interest at stake here. “Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects.” Zadvydas, 533 U.S. at 690, 121 S.Ct. 2491.
Because of the harsh practical realities of confinement, the Supreme Court has historically afforded very strong procedural protections to individuals facing prolonged civil detention. See Kansas v. Hendricks, 521 U.S. 346, 357, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (noting that the Supreme Court has upheld civil detention, but only “provided the confinement takes place pursuant to proper procedures and evidentiary standards”); Rodriguez, 804 F.3d at 1074-76 (citing cases). Consistent with this principle, “[t]he Court’s civil detention case law ... emphasizes that due process requires that the government bear the burden of proving the need for detention, at least by ... ‘clear and convincing’ evidence.”[9] Anello, supra, at 378; see also Addington v. Texas, 441 U.S. 418, 427, 433, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (requiring clear and convincing evidence in the context of civil commitment for the mentally ill). Why would due process countenance a different standard here? I would require that the government prove the necessity of a § 1226(c) detainee’s continued detention by clear and convincing evidence in order to justify a denial of bond.
The majority opinion identifies scant legal support for its proposition that the government may continue to detain criminal aliens past the point when the detention becomes unreasonably prolonged unless the aliens can demonstrate a reason not to do so. Indeed, the majority opinion fails even to acknowledge that, in placing the burden of proof on the detainee, it departs from the reasoned judgment of every other circuit to have addressed the issue, two of which have adopted clear and convincing evidence as the appropriate burden of proof.[10] See Lora, 804 F.3d at *1233 616 (“[A] detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community.”); Diop, 656 F.3d at 233 (“[T]he Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.”); Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) (“[T]he government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond....”).
A heavy burden of proof is particularly appropriate in the context of § 1226(c) for two reasons. First, a § 1226(c) detainee will only receive a bond hearing after her detention has become unreasonably prolonged. Thus, those detainees who receive bond hearings will, by necessity, already have suffered a significant constitutional deprivation.[11] The severity of that deprivation counsels in favor of stronger procedural protections. See Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
Second, placing the burden of proof on criminal aliens at bond hearings will likely leave many in detention unnecessarily. According to data provided by the American Civil Liberties Union, nearly 70% of the I,680 bond hearings conducted in the Central District of California from October 2012 to April 2014 resulted in the alien’s release.[12] This data suggests that mandatory detention under § 1226(c) results in the detention of many aliens who are unlikely to flee or pose a threat to other persons. Placing a heavier burden of proof on the government will help restrict § 1226(e)’s overly broad effect and ensure that only *1234 those aliens likely to abscond or present a public danger will remain in custody.
. For its part, the majority opinion identifies three reasons why applying existing § 1226(a) regulations to § 1226(c) detainees satisfies due process requirements. First, the majority opinion notes that it “makes sense that, once the government can no longer constitutionally detain a criminal alien under [§ 1226(c) ] without a bond hearing, the criminal alien’s detention defaults to [§ 1226(a)].” Maj. Op. at 1219. Although perhaps convenient, the fact that existing procedures governing the detention of a different class of alien detainees — who are not subject to mandatory detention — could conceivably be applied to § 1226(c) detainees says nothing about the constitutional adequacy of those procedures once a criminal alien’s detention has become unreasonably prolonged.[13]
Second, the majority opinion states that applying existing regulations under § 1226(a) is consistent with the basic principle that courts should “afford agencies considerable deference in their policy realms.” Id. at 1219. But the choice we face here does not concern an agency’s policy preferences; rather, it concerns how to interpret § 1226(c) in a manner consistent with constitutional principles. “We may not defer to [an agency’s] regulations interpreting [a statute] ... if they raise grave constitutional doubts.”[14] Diouf v. Napolitano, 634 F.3d 1081, 1090 (9th Cir. 2011); accord Miller v. Johnson, 515 U.S. 900, 923, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995) (noting it is “inappropriate for a court engaged in constitutional scrutiny to accord deference to [an agency’s] interpretation of [a statute]”); Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1249 (10th Cir. 2008) (“It is well established that the canon of constitutional avoidance does constrain an agency’s discretion to interpret statutory ambiguities, even when Chevron deference would otherwise be due.”); Nat’l Mining Ass’n v. Kempthorne, 512 F.3d 702, 711 (D.C. Cir. 2008) (“[The] canon of constitutional avoidance trumps Chevron deference, and we will not submit to an agency’s interpretation of a statute if it presents serious constitutional difficulties.” *1235 (citation and internal quotation marks omitted)).
The majority opinion’s third — and most intuitively appealing — justification for its position is that shifting the burden of proof to the government for criminal aliens detained under § 1226(c) “would give criminal aliens a benefit that non-criminal aliens [detained under § 1226(a)] do not have.” Maj. Op. at 1219-20. But neither the Supreme Court nor this circuit has ever before addressed whether the regulations governing § 1226(a) detainees satisfy due process requirements. And that question is not before us now. As such, I cannot agree that a procedure created and used for § 1226(a) detainees tells us anything about the constitutional adequacy of the procedures governing unreasonably prolonged detention under § 1226(c). Our decision regarding what due process requires in this context perhaps should bear upon the protections owed to § 1226(a) detainees, not the other way around. Indeed, the Ninth Circuit, which has adopted a clear and convincing evidence standard for § 1226(c) detainees, appears to have adopted the same standard for § 1226(a) detainees. See Rodriguez, 804 F.3d at 1087 (applying a clear and convincing evidence standard to a class comprised of aliens detained under § 1226(a) and (c)); Singh, 638 F.3d at 1205 (holding that “the clear and convincing evidence standard of proof applies in Casas[-Castrillon, 535 F.3d at 948, § 1226(a) ] bond hearings”).
Significant deprivations of liberty warrant significant procedural protections. Given the fundamental liberty interests at stake here, we should prohibit unreasonably prolonged detention under § 1226(c) unless the government can demonstrate by clear and convincing evidence that such detention is necessary. The Due Process Clause requires nothing less.
III. Conclusion
“In our society liberty is the norm, and detention ... the carefully limited exception.” United States v. Salerno, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Despite that promise, aliens detained pursuant to § 1226(c) are imprisoned for months, if not years, without bond hearings and based on the mere suspicion that they might abscond or commit future crimes. Although the majority and I agree such stunning deprivation of liberty cannot, in all likelihood, withstand constitutional muster, the majority opinion nonetheless adopts an approach that threatens to arbitrarily deny these aliens the opportunity to contest their detention at a bond hearing. And were some of these aliens able to win a hearing, the majority opinion would presume their continued detention acceptable unless they present persuasive evidence to the contrary.
I find such meager procedural protections plainly insufficient in the light of the fundamental liberty interests at stake. I would adopt the Second and Ninth Circuits’ bright-line approach and hold that, to avoid constitutional concerns, § 1226(c) detainees must be afforded a bond hearing after six months of detention and subsequently released unless the government establishes the necessity of their continued detention by clear and convincing evidence. But I agree wholeheartedly with the majority that the government has detained Mr. Sopo for an unreasonably long time, and he must be given a bond hearing immediately.

. An alien may be detained beyond the 90-day removal period if he (1) is inadmissible; (2) is removable as a result of violations of status requirements, violations of entry conditions, violations of criminal law, or reasons of security or foreign policy; or (3) has been determined to be a public risk or unlikely to comply with the order of removal. Zadvydas, 533 U.S. at 682, 121 S.Ct. 2491; 8 U.S.C. § 1231(a)(6).

. See Reid v. Donelan, 819 F.3d 486, 494-95 (1st Cir. 2016); Lora v. Shanahan, 804 F.3d *1223 601, 616 (2d Cir. 2015), petition for cert. filed, 84 U.S.L.W. 3562 (U.S. Apr. 21, 2016) (No. 15-1307); Rodriguez v. Robbins, 715 F.3d 1127, 1134 (9th Cir. 2013); Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3d Cir. 2011); Ly v. Hansen, 351 F.3d 263, 270 (6th Cir. 2003).

. The majority opinion attempts to distinguish the application of a six-month presumption in Zadvydas from a similar application here by' arguing that “Zadvydas did not actually adopt a six-month cutoff.” Maj. Op. at 1216. It is true that under the Supreme Court’s decision in Zadvydas, “not every alien to be removed [is] released after six months,” id. (quoting Reid, 819 F.3d at 496), but neither would every criminal alien under the bright-line approach. I see very little to distinguish the Supreme Court's approach in Zadvydas from the bright-line approach I endorse here. Both approaches permit the government to detain an alien for a period of six months and both also permit an alien's continued detention after the expiration of that period if the government can make the requisite showing justifying continued detention. If there is a material difference between the two approaches, the majority opinion never identifies it.
*1225 The majority opinion also attempts to explain away the Supreme Court's apparent preference for a bright-line approach to prolonged alien detention by suggesting that such an approach is less appropriate for application to § 1226(c) detention because "§ 1226(c) does not come ready-made with a time cutoff the way § 1231 does.” Id. at 1216. The majority opinion is correct that § 1231(a) permits the government to detain an alien subject to a final order of removal for a period of 90 days. 8 U.S.C. § 1231(a)(2). But Zadvydas concerned detention after the expiration of that 90-day removal period, Zadvydas, 533 U.S. at 682, 121 S.Ct. 2491, and detention after the removal period is not subject to any statutory time "cutoff." See 8 U.S.C. § 1231(a)(6). Beyond noting the initial 90-day removal period, the majority opinion never satisfactorily explains why the Supreme Court's adoption of a six-month presumption in Zadvydas would make a similar bright-line approach unreasonable in the context of § 1226(c). Indeed, the majority opinion cites to nothing in Zadvydas indicating that § 1231(a)’s specification of a 90-day removal period influenced in any way the Court's decision to recognize a presumption of unreasonableness after six months in lieu of implementing a more flexible approach. Moreover, the majority opinion’s apparent reliance on Zadvydas to demonstrate that a bright-line approach is inappropriate seems difficult to reconcile with the majority’s suggestion that "[t]he need for a bond inquiry is likely to arise in the six-month to one-year window.” Maj. Op. at 1217-18.

. It is unclear to me that the majority opinion’s case-by-case approach even affords courts substantially more flexibility than does the bright-line approach. Under the case-by-case approach, as the duration of detention grows, a detainee will either get released or become entitled to a bond hearing at some point. The majority opinion concedes that this point is in all likelihood sometime between six months and one year. Maj. Op. at 1217-18. Thus, the flexibility for which the majority opinion advocates diminishes over time and in most cases will disappear after 12 months.

. It should go without saying that while the bright-line approach could conceivably result in an increase in the number of bond hearings and thus in attendant administrative expense, any such cost pales in comparison to the deprivation of liberty suffered by § 1226(c) detainees who have languished in detention for an unreasonably long time. Moreover, to the extent the case-by-case approach reduces administrative expense by decreasing the number of bond hearings provided to criminal aliens, any cost savings will likely be offset by an increase in the judicial costs associated with applying the case-by-case approach on habeas review. See Reid, 819 F.3d at 498.

. Although the First Circuit has reconceptual-ized application of the case-by-case approach to deciding whether detention under § 1226(c) is reasonable, its two-step approach still follows the same broad analysis as that of other circuits. At the first step, a court on habeas review decides whether a § 1226(c) detainee is entitled to a bond hearing or whether the government may continue her detention as a categorical matter. At the second step, an immigration judge at a bond hearing decides whether to release the alien after conducting an individualized inquiry into her likelihood' of absconding or presenting a danger to the public. See Reid, 819 F.3d at 499-500.

. The majority opinion reads much into Justice Kennedy's statement that "the circum *1231 stances of [the petitioner’s] case” in Demore did not warrant an inference that the government had detained the petitioner for non-statutory purposes, Demore, 538 U.S. at 533, 123 S.Ct. 1708 (Kennedy, J. concurring), concluding that Justice Kennedy had "examined the factual specifics of the case at hand.” Maj. Op. at 1215. But Justice Kennedy’s opinion never discussed any of the factors the majority opinion identifies as pertinent to determining whether a criminal alien’s detention is unreasonably prolonged. Indeed, in observing that "a lawful permanent resident alien ... could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable,” Justice Kennedy only mentioned "unreasonable delay” in concluding removal proceedings as a factor favoring the provision of a bond hearing. Demore, 538 U.S. at 532, 123 S.Ct. 1708 (Kennedy, J. concurring). If anything, this singular focus on the duration of a criminal alien's detention when deciding whether to grant a bond hearing seems, to me, more consistent with the bright-line approach than a multi-factor, case-by-case approach.

. Section 1226(a) governs the detention of non-criminal aliens during the pendency of their removal proceedings. It grants the Attorney General discretion to detain a non-criminal alien throughout the alien’s removal proceedings or to release the alien on bond or conditional parole. 8 U.S.C. § 1226(a). The Department of Homeland Security has pro *1232 mulgated regulations setting forth the process by which a § 1226(a) detainee may obtain release. See 8 C.F.R. § 1236.1. These regulations permit an agency officer to release an alien detained under § 1226(a) if the alien can “demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.” Id. § 1236.1(c)(8). The regulations also detail the procedures for appealing the officer’s decision to an immigration judge or the Board of Immigration Appeals. See id. § 1236.1(d).

. The Supreme Court has, however, adopted a lower burden of proof for relatively abbreviated detention. See, e.g., Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (requiring demonstration of probable cause for detention following arrest).

. Like other circuits that have considered the issue, the Sixth Circuit, in Ly, read an implicit limitation into § 1226(c), holding that the government may only detain a criminal alien without bond "for a reasonable period of time required to initiate and conclude removal proceedings promptly.” 351 F.3d at 273. But it did not explicitly address what *1233 burden of proof would apply to a bond hearing held for a § 1226(c) detainee. Id. The court did, however, intimate that the government should bear the burden of proving the necessity of continued detention, noting that "[w]hen actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a government showing of a strong special justification.” Id. (internal quotation marks omitted).
The First Circuit also has not addressed the burden of proof applicable to bond hearings provided to § 1226(c) detainees. See Reid, 819 F.3d at 501. The majority opinion asserts that in Reid, "the First Circuit summarily affirmed the district court's ruling that Reid was entitled to a bond hearing under the regulations effectuating § 1226(a).” Maj. Op. at 1220 n.ll. Presumably, the majority opinion is implying that the First Circuit would have agreed that § 1226(c) detainees should bear the burden of proof at bond hearings. But the First Circuit explicitly declined to address the burden of proof question, noting that the district court had "examined the appropriate relief, which included a request by Reid that the court mandate certain procedural protections ... that exceed those currently contemplated by regulations implementing bond hearings under 8 U.S.C. § 1226(a)” but that "Reid’s personal situation [did] not warrant adjudication of these constitutional questions” because he had already been granted bond. Reid, 819 F.3d at 501.

. Pursuant to the majority opinion’s case-by-case approach, a court on habeas review would have to find a criminal alien's detention under § 1226(c) unreasonably prolonged before the alien could receive a bond hearing. Under the bright-line approach, the duration of an alien’s detention would be unreasonable after six months and the alien would be entitled to a bond hearing at that time. In either case, the alien would receive a bond hearing only if her detention had been unreasonable in duration.

. I am particularly concerned that prolonged detention during the pendency of removal proceedings threatens to punish most severely those aliens with the strongest defenses to removal, since they are the least likely to expedite proceedings by stipulating to removal. Ironically, for the same reason these aliens have the least incentive to abscond during their removal proceedings. See Reid, 819 F.3d at 497 ("[T]he failure to adopt a bright-line rule may have the perverse effect of increasing detention times for those least likely to actually be removed at the conclusion of their proceedings.”).

. The majority opinion also observes that criminal aliens who have been ordered removed and released on supervision are governed by regulations controlling the supervision of non-criminal aliens. This, the majority opinion reasons, is “further evidence that the statutes relating to non-criminal aliens provide the general rules for detention, and the statutes governing criminal aliens represent exceptions.” Maj. Op. at 1219 n.9. I do not disagree that § 1226(c) may fairly be interpreted as an exception to § 1226(a). Instead, I question how best to interpret § 1226(c) in a manner consistent with due process. The fact that it is possible to interpret § 1226(c) as an exception to § 1226(a) tells us nothing about whether the procedural protections afforded by regulations promulgated pursuant to § 1226(a) are constitutionally adequate as applied to unreasonably prolonged detention under § 1226(c).

. To support its claim that we should apply existing § 1226(a) regulations to § 1226(c) detainees, the majority opinion cites Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority, which states that "an agency acting within its authority to make policy choices consistent with the congressional mandate should receive considerable deference from courts.” 464 U.S. 89, 98 n.8, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983); Maj. Op. at 1219. But the majority opinion omits the tail-end of the quotation, which states that such deference is only appropriate when the agency's actions "conform to applicable procedural requirements and are not arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law.” Bureau of Alcohol, Tobacco & Firearms, 464 U.S. at 98 n.8, 104 S.Ct. 439 (internal quotation marks omitted). Consistent with this principle, because § 1226(a) regulations raise serious due process concerns when applied to § 1226(c) detainees, we are under no obligation to defer to them.